The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D. Armon presiding. Good morning, counsel. Morning. Morning, your honor. We'll call as our next case 4-18-0764, People of the State of Illinois v. Jeffrey L. Wells. Counsel for the appellant, could you please state your name for the record? Clare Lucy for the appellant, your honor. Thank you, Ms. Lucy. Counsel for appellate, could you please state your name for the record? Kathy Shepard for the appellate. Thank you, Ms. Shepard. Ms. Lucy, you may proceed. Thank you, your honor. Ms. Lucy, before you start, I'm going to indicate it's a little difficult to hear you, so I don't know if you can turn up your volume or just be aware of that. Can the court hear me? That's better. That's better. I will speak at full volume, projecting to the court. Well, good morning, and may it please the court, counsel. My name is Sarah Lucy from the Office of the State Appellate Defender, on behalf of the defendant, Jeffrey Wells. This morning, may it please the court, I'd like to concentrate my oral argument on arguments 2 through 4, though, of course, I'm more than happy to accept or answer questions on argument 5, should the court have any. The crux of this case can be seen most clearly in Officer Jones's testimony, when he said that Wells told him that he had driven the lawnmower that day, and he also admitted to smoking methamphetamine. At no point did the court, or did the state, close that hole and prove that the smoking of methamphetamine had predated driving the lawnmower. So while the state did have Lorena Clark testify that she saw him driving the lawnmower at 5 p.m., and the state did prove that when he was arrested at 10.15 p.m., his blood and urine tested positive for methamphetamine, the state at no time offered any proof about when that methamphetamine use had taken place. For the crime of driving under the influence, the pivotal question is whether he was under the influence while he drove. Driving on the same day that one consumes alcohol is not driving under the influence. So while the state has tried to argue that he was in actual physical control of the lawnmower when Officer Jones arrived that night between 9.30 and 10.15, indeed he was only standing nearby to the lawnmower, which was also nearby to his own home. It's equally possible that he was in his own home and saw the flashing police lights coming down the street and simply decided to go out to investigate, and not being anywhere near his lawnmower until he saw the police pull up to it. The only indication of actual physical control in this case, the four factors are whether he was in the driver's seat of the vehicle, he was not, whether he had possession of the ignition key, this is the only one that applies in this case because Officer Jones testified that he did, was physically able to start the engine and motor vehicle with a lawnmower, that's not really the same question as in a car. The lawnmower is capable of being pushed without the key, without starting the engine, so that anyone passing by could have had actual physical control of the lawnmower. And finally, factor four is were the doors locked, there are no doors on a lawnmower. This is in opposite to the two cases that the state cited to People v. Morris, where the driver was asleep in the front driver's seat of his car with the car keys in his hand. In People v. Roden, the officers came upon the defendant after a car crash that happened on the side of a highway. The driver admitted that he had driven the car after he consumed four to five drinks in only 30 to 40 minutes. Those would show actual physical control because there's no other explanation really, I mean the person could start the car at any time and begin driving under intoxication. Here... Miss Lucy, can I ask you a question? All of these things could be established, hypothetically, all of these things can be established circumstantially, can't they? They could be established circumstantially, but they would have to have some sort of evidence. That is to say, somebody saw him driving maybe erratically to show that he had consumed methamphetamine before he drove. Here, there's really only evidence that he drove and evidence that he consumed methamphetamine, but there's no even circumstantial evidence to connect those two together. So, as this court wrote in People v. Dive, we should only draw reasonable inferences in favor of the prosecution. We should not make random speculation in favor of the prosecution, and I believe that's what the state is asking this court to do here. Even the trial court itself pointed out that after the presentation of the evidence presented by the state, there was a question as to whether he was impaired at the time he was operating the motor vehicle, because the last time it was observed to being operated was at 5 p.m. when the neighbor saw him driving, and Lorena Clark didn't give any influence at that time. Lucy, that brings up another question. What exactly was he charged with in Count 1 of the information? Driving under the influence, Your Honor. Right. And under which subsection was he charged? Subsection 625 ILCS 5-11-501A6, Your Honor. Which is the provision dealing with any amount of a controlled substance in the system, correct? Correct, Your Honor. But the body of the charge, and it would seem like each of the arguments of both the state, the defense, and the comments of the court would lead us to believe that everybody thought it was under subsection 4, under the influence, right? Yes, Your Honor. I believe... Which is a different charge? Perhaps I'm not entirely clear on which Your Honor is saying. Well, subsection 4 requires an evidence that you're under the influence at the time that you're in control of the vehicle. Subsection 6 simply requires that you have some amount of a controlled substance in your system when you're in control of the vehicle. I understand you now, Your Honor. Thank you so much. Right. So he need not have been weaving down the road to have some amount in his system. But everybody here seemed to believe that the evidence required the state to show that he was under the influence. In other words, that he was, in fact, affected by whatever substance he had in his system, and that was affecting his ability to drive, right? It does seem that way from the evidence. But of course, the section that he was charged under only requires some amount to be in his system. But the state didn't offer any evidence of when he consumed methamphetamine. The testimony from Officer Jones, which was reiterated in his sworn affidavit on C-24, is that he admitted to smoking methamphetamine. But in neither his live testimony nor in his sworn affidavit did he give a time for when he smoked the methamphetamine. So we have a five-hour gap between when he was seen driving and when he was arrested. At any point in those five hours where no one testified that they saw him, he could have smoked methamphetamine and then had the methamphetamine in his system without having had any methamphetamine in his system before he got onto the lawnmower. That is to say, there's simply no evidence that the state presented at trial that he smoked methamphetamine before 5 p.m. on June 6th. And that's the hole that the state simply never closed in its evidence and that the court commented on, that it was really Jeffrey Wells' own testimony that happened after the state rested that sealed his doom. He was the one who did give the timeline that the state was never able to provide. As such, his attorney was ineffective for failing to ask for a directed verdict at the close of the state's case. At that moment in time, no one could prove that he had a molecule of methamphetamine, whether it affected his driving abilities or not, that he had anything in his system when Ms. Clark saw him at the lawnmower at 5 p.m. So there's a reasonable probability, which is all that Strickland requires, that is a probability sufficient to undermine confidence in the outcome that this court would have granted a motion for a directed verdict, given its own comments that really there was no proof of this time, this crucial time, of whether he had methamphetamine in his system when he drove. And I will only point out that our Supreme Court in People v. Campbell delineated very clearly what are the five choices that a defense counsel must make as the ultimate decision after consulting with this client. And so while the client can decide what plea to enter, whether to waive a jury trial, whether to testify on his own behalf, whether to tender a lesser-included offense instruction, and whether to appeal, it is the attorney's decision to make all matters of tactics and to conduct cross-examination, what jurors to accept or strike, and what trial motions should be made. So even if Mr. Wells insisted that he wanted to testify and he would have no other way but to testify, as indeed counsel did indicate that it was over his objection that Mr. Wells decided to testify, which was why counsel, as it turns out, before it was Mr. Wells' decision to testify, it was defense counsel's decision whether or not to make that pivotal directed verdict. And if indeed counsel did not think that it was wise that his client should testify, it was all the more imperative that he make the trial strategy decision to at least ask for a directed verdict. If the court had said no, it would have then been Mr. Wells' choice to testify, his unabridged right. But defense counsel failed to even do so, which changed the results in this case, or at least there is a very reasonable probability that it would have. And positing that the state had no other evidence to offer on what time, whether it was before 5 p.m. or after 5 p.m. that Mr. Wells smoked or ingested methamphetamine, his conviction on this should be entirely vacated because there would be no remand that would have a different result. The same can be said of his conviction for driving while his license was revoked. And I just want to make sure, can the court still hear me? Yes. Okay. The only evidence that the state presented on whether Mr. Wells' license to revoke was revoked on June 6th was the hearsay testimony and possibly the double hearsay testimony from Officer Jones where the prosecutor asked, did you have Mr. Wells' driver's status checked? Importantly, didn't even ask if Officer Jones had checked it himself, had been the one who checked the computer. Asked if he had had it checked, perhaps meaning that there was yet another officer who was a midway person between the computer check and Officer Jones. The answer is indicative. It says yes, it revealed that he had a revoked driver's license. That statement is the computer check itself. The computer told me that he had a revoked driver's license. That is quintessential hearsay. And even if it were necessary to explain investigatory procedure, then it would not be admissible as substantive evidence. If it's not admissible as substantive evidence, then the state essentially has given no, I shouldn't have said essentially, excuse me, the state did not give any evidence, any substantive evidence that the license was revoked. And even relying on this hearsay, it wasn't enough detail. He said that the driver's status was checked, but he doesn't say through what system or that he verified that it was the correct Mr. Wells, or that there was any sort of indication of any other information that would render these results reliable such that the entire basis could, of this conviction, could rest on this testimony. The state nearly had to introduce his driving abstract to prove this point, and yet did not do so. The shepherd will say too bad, so sad, but you're allowed in the hearsay. Hearsay, if it's not objected to, can become substantive evidence, can it? And that's my, it was to my point, Your Honor, of how even if this hearsay is admitted and relied upon and has become substantive, it's insufficient. That is to say, if the driving abstract was here, it would have his date of birth on it, so we would know that it was the correct Jeffrey Wells. It would give additional information. It would say that it was revoked on the day of June 6. It would have the seal of the state, of the Secretary of State, to show its authenticity. We would know, therefore, where it came from and why it's authentic, and we would be able to rely on it. Here we have, and even, did you have the driver's license check? We don't know who ran it. We don't know what they ran, what they checked this through. We don't know anything except it revealed, the it being a mystery, that he had a revoked driver's license, but I find it hard to believe that there's only one Jeffrey Wells in all of Illinois, neither one being a particularly uncommon name, but we have nothing in the record to show us that Officer Jones checked the correct Jeffrey Wells in this case, and that indeed it was his record that he was looking at that evening. So even accepting this bare bones testimony as substantive evidence, the state has still failed to meet its burden beyond a reasonable doubt. Having done so, again, this conviction should be reversed outright. If this court declines to do so, it was still ineffective. As Justice D. Armand pointed out, the counsel failed to object to this hearsay. So even if this court declines to reverse outright, I would ask this court to find the counsel was once again ineffective in not objecting to this, and then reverse this charge for a new trial. The state similarly failed to meet its burden when it asked Officer Jones about the field test that he performed on the supposed methamphetamine pipe that was found in the trailer of Mr. Wells's lawnmower. The state asked him five yes or no questions, the answer to all five of which was yes. Did you test the pipe? Have you received training on how to conduct a field test? Did you follow procedure? Did you use the approved kit? And did it test positive? This is even less fair. The state did not elicit testimony on how Officer Jones had been trained, on how he performed the field test, on what the contents of the approved kit were, and how he knew that it tested positive. This bare bones, once again, this bare bones testimony, much like with the driving or lack of driving abstract, is simply not sufficient for the trial court to have found that the methamphetamine residue was in fact methamphetamine, and that the test was sufficiently reliable. The state cited to Korzenowski, which was a forfeiture case. This is a sufficiency of the evidence case. There was only one test that was being disputed where there was still ample evidence. Here, the only thing that ties the pipe to methamphetamine is this one field test. There was no secondary laboratory test that was a stipulation to the drug expert, and certainly there is no stipulation here. So, in this case, for the first charge of driving under the influence, the state failed to prove that there was any methamphetamine whatsoever in Jeffrey Welder's system before or at five o'clock, which is the only time that he was seen driving the lawnmower. The state failed to prove that his license was revoked when it offered Officer Jones's bare bones testimony, and it failed to prove that there was methamphetamine residue and that the field test was reliable when it only offered Officer Jones's bare bones testimony. Unless this court has any questions, I'll thank this court. I see none. Thank you, Ms. Lucy. You'll have an opportunity on rebuttal. Ms. Shepard. May I please support? Counsel. Starting with the last issue discussed first, Hagberg, of course, was a case in which the Supreme Court reversed based on evidence that was brought out in cross-examination of the police for performing the test. The color that indicated the substance was cocaine or the color that the substance actually turned merely asserted that the substance somehow turned the right color, whatever that color might be. We don't have any sort of testimony like that in this case. The officer testified on direct as to the field test, talked about the circumstances of the defendant's sites or that the state was able to find that requires anything more. Hagberg certainly doesn't require anything more. If there was more required, it was up to defendant to make that objection. As this court stated in Korzanewski, to challenge the foundation for admission of a test, a defendant must make a timely and specific objection to the foundation requirements. As this court is well aware, making an objection to foundation is especially important because errors in laying a foundation are easily cured. That's well recognized. Why isn't the failure to do so constitute ineffective assistance of counsel? Because there's no question as to the test. There's no prejudice. There's no showing that ... It's the crux of the charge. Yes. You couldn't get more substantive than that. Defense counsel didn't require anything beyond this general response, essentially, that, yeah, I tested him. Yeah, it's the procedure we use. Yeah, it's an approved kit. And it's positive for methamphetamine. Didn't explain what the test was. Didn't explain which kit it was. Didn't explain what the procedures were. Didn't explain how you read it to determine that it's a positive test. It's about as general as you could get. Well, that's true, Your Honor. I'm not aware of any authority that would require more than that. And if there was, why would we find that there's prejudice there? If it's not enough, as far as I would be aware, this court would be the first to determine that more was needed. And in Hagberg- You're saying that if counsel had objected to this, the objection would have been sustained and there would have been no further evidence needed to establish that it was methamphetamine. I'm not saying that the objection would have been sustained. There's no- I'm sorry, I misspoke. The objection would have been overruled, and this would have been all of the evidence necessary to establish it was methamphetamine. Hagberg says that the fact that a test is a field test is not enough to make the test sufficient. And the Supreme Court in Hagberg said that the problem there was when on cross examination by defense counsel, evidence was brought out that the officer really didn't know what he was talking about. And the fact that defense counsel didn't ask similar questions here can't be prejudicial or ineffective assistance because there's no showing that that was Jones wouldn't have given more detail had he been asked those questions. So there's no basis. It's speculative to say that, well, you know, maybe when the- if he had been asked those questions, Deputy Jones wouldn't have been able to answer sufficiently. Ms. Shepard, may I ask you, what if we had even less than we have here? What if it was just and you have nothing more and defense counsel failed to object based on foundation? Are you saying that that couldn't be a legitimate claim for ineffective assistance of counsel because he's unable to establish prejudice? I'm not, again, Your Honor, I'm not aware of any authority that would require more than that. It certainly might be something that defense counsel might want to explore. But again, Hagbrook says the fact that it's a field test by itself doesn't make the test insufficient. And then as far as foundation, you know, there's no authority cited by defendant, certainly, that would require anything more. And hypothetically, I guess the answer is no, I don't see that that would be a problem. Thank you. Certainly. So as to the abstract and the driving abstract to establish revocation of defendant's driver's license, and whether or not Jones's testimony about the revocation was hearsay, it clearly was not hearsay. There were no statements that Jones testified about. He testified simply that during the course of his interactions and investigation with defendant, he had defendant's driver's status checked, and it revealed that he had a revoked driver's license. Contrary to opposing counsel's representations, Jones didn't testify that he read a statement, that he read a statement from a computer, that the system revealed that he had a revoked license, that he interacted with the computer system, or even that his investigation yielded information. And the inference that records or statements were revealed during the check of defendant's driver's status does not make his testimony hearsay. And as to the abstract, that wasn't required. The authority that defendant relies on has to do with offering proof of the defendant's abstract as proof of any prior conviction, which of course is not an element of driving with a revoked license. So let's see. And as to the first issue, again, we're looking at defendant argued lack of evidence of corpus delicti. And for that, it's only required to have independent evidence of defendant's statements, and evidence even independent of defendant's statements, which needs to only correspond with the circumstances recited in his statements, and which tend to connect him with the crime. So, and again, not only, as Justice DeArmond pointed out, was the charge, it only required that he have any amount of meth in his system, but also the driving part of that, he would be guilty if he drove or was in actual physical control of the lawnmower. And so of course, the evidence showed that he was in actual physical control of the lawnmower. At the time Deputy Jones arrived, he was standing, defendant was standing next to it. The lawnmower was in the middle of the street. And defendant had the key to the lawnmower, the ignition key in his pocket. And the four factors and the factors that opposing counsel was going over, those, of course, are not exhaustive. These other circumstances, it wasn't required that he'd be sitting in the driver's seat or any of those things. So it showed that he was in actual physical, the evidence showed that he was in actual physical control at the time the deputy arrived. And he, the, those circumstances corroborate his statements to the deputy, which were testified about in, by the deputy in the state's case in chief that defendant told him he parked the lawnmower in the roadway. He drove the lawnmower in the 100 block. He drove it from Dave Pace's house. He also admitted to smoking methamphetamine. And he said, I'm not drunk. I smoked meth, but I'm not drunk. So I think that we could also consider the fact that defendant did not protest. He kept protesting that he wasn't drunk and he, but he, he did smoke meth, which to him meant that he wasn't driving under the influence. He never protested that he didn't drive the lawnmower. So that's something else that I think the court could consider. So there was enough evidence to show, to, to, to show that there was not, that there, there wasn't enough evidence to survive a motion for finding him not guilty at the close of the state's case, which is the equivalent of a motion for direct verdict, directed verdict in a bench trial. And defendant relies heavily on the court's statement in finding him guilty saying, well, you know, there was some doubt as to whether or not he was under the influence at the time. So that only goes to prejudice. It doesn't go to whether counsel had any duty to make this motion at the close of the state's case. And the record clearly shows that there was no basis for that. And so let's see. Okay. I think that that's about all I have to say on those issues. Everything else was in the brief. So I would, I would just ask this court to I see none. Thank you, Ms. Shepherd. Ms. Lucy. Thank you, Your Honor. Two brief points on rebuttal, if I may. There was some discussion about People v. Hadberg, and I would only like to quote the Supreme Court in 2019 and People v. Murray. It is axiomatic that the state carries the burden of proving each element of the charge defense beyond a reasonable doubt. I think if the state had put on any sort of expert witness that was going to testify about a scientific process, be it DNA evidence, be it fingerprint evidence, that it would be the state's burden to establish foundation. Where was the education? How many tests did they run? What procedure did they use? And how can we be sure that that procedure gave the result that the expert is testifying to? And to your point, Justice DeArmond, counsel was absolutely ineffective for failing to object that this foundation be laid. Indeed, without this foundation, maybe it's true that the Officer Jones could have shorted up. Maybe it would have revealed a fatal flaw in his logic that he was educated 10 years ago on how to conduct a field test or that this was his first field test or that he had no idea how he knew that it was positive for methamphetamine. So I would argue first that the state should have established that testimony as a matter of its burden of proof. The state has to prove every element. And while field tests are absolutely sufficient or can be, I believe it's the state's burden to prove that they are or that they were sufficient in this case. And even if this court disagrees, it was ineffective assistance of counsel that he did not object to this foundational issue. Moving back to argument two, Jeffrey Wells' statements never say that he consumed methamphetamine before he drove. It just says that he drove the lawnmower, which we already knew. It also, he says that he consumed methamphetamine, which again, is already beyond dispute. He had a blood and urine test done. The essential element is when. And none of his statements go to when he consumed the methamphetamine. Even his statement of, I'm not drunk, I'm just high. Mr. Wells testified in his statement of elocution during the sentencing hearing that he believes himself to be a recovering alcoholic. And so it's very important to him that he has not had a drink since, I can't remember exactly when. So he, in his mind, very firmly differentiates between alcohol and methamphetamine and would have been proud of the fact that he had continued not to drink. That does not indicate that he smoked methamphetamine before he began driving the ever closed up, which is why I point so heavily to the court saying that there was a real question, a undeniable question at the close of the state's evidence about when he ingested any methamphetamine whatsoever. For these reasons, I ask that this court vacate each of his three convictions. Thank you. Thank you, counsel. The court will take this matter under advisement. The court stands in recess.